IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHOICE HOTELS INTERNATIONAL, INC. | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) CIVIL ACTION NO. 16-452-CG-B ) |
| KEY HOTELS OF ATMORE II, LLC; ANAND PATEL; DIPAN PATEL; and SARJU PATEL, | ) ) ) ) ) |
| Defendants. | ) |

**ORDER and DEFAULT JUDGMENT**

This matter is before the Court on a motion for default judgment and accompanying memorandum in support filed by Choice Hotels International, Inc. ("Plaintiff") in this action against Key Hotels of Atmore II, LLC; Anand Patel; Dipan Patel; and Sarju Patel ("Defendants"). (Doc. 18; Doc. 19). For the reasons set forth below, the Court finds that Plaintiff's motion is due to be **GRANTED**.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is a Delaware corporation. (Doc. 1, ¶ 1). Its principal place of business is in Maryland and is licensed to conduct business in Alabama. *Id*. Plaintiff has been in the business of operating hotels and motels since the 1930s and has become one of the largest and most successful lodging franchisors in the world, which includes the QUALITY® family of marks.[1] *Id*. at ¶¶ 13–17. The

---

[1] Plaintiff is the registrant of United States Trademark Registration No. 0,886,881 for the mark QUALITY; No. 1,050,372 for the mark QUALITY for use in connection with the provision of hotel, motel, and restaurant services; No. 1,183,294 for the

QUALITY® family of marks have become widely associated, in the minds of the consuming and general public, with goods and services offered by Plaintiff.  *Id.* at ¶ 52.  Plaintiff, its predecessors, and franchisees have worked to instill and use its marks in association with the highest value of hotel and motel services.  *Id.* at ¶ 48.  Defendants Anand Patel, Dipan Patel, and Sarju Patel are natural persons residing within the Southern District of Alabama and are members of Key Hotels of Atmore II, LLC.  *Id.* at ¶¶ 3–5.  Defendant Key Hotels of Atmore II, LLC is a limited

---

mark QUALITY INN for use in connection with the provision of hotel, motel, and restaurant services; No. 1,534,820 for the mark QUALITY HOTEL for use in connection with the provision of hotel and restaurant services; No. 1,769,488 for the mark QUALITY RESORT for use in connection with the provision of hotel and motel services; No. 2,729,999 for the mark Q QUALITY INN + design for use in connection with the provision of hotel and motel services; No. 2,732,875 for the mark Q QUALITY SUITES + design for use in connection with the provision of hotel and motel services; No. 2,946,054 for the mark Q QUALITY + design for use in connection with the provision of hotel and motel services, hotel and motel reservation services for others, and online hotel and motel reservation services for others; No. 3,053,888 for the mark QUALITY SUITES for use in connection with the provision of hotel and motel services, hotel and motel reservation services for others, and online hotel and motel reservation services for others; No. 3,448,436 for the mark QUALITY INN & SUITES for use in connection with the provision of hotel and motel services, hotel and motel reservation services for others, and online hotel and motel reservation services for others; No. 3,448,437 for the mark Q QUALITY INN & SUITES + design for use in connection with the provision of hotel and motel services, hotel and motel reservation services for others, and online hotel and motel reservation services for others; No. 3,435,885 for the mark Q QUALITY + design for use in connection with the provision of hotel and motel services, hotel and motel reservation services for others, and online hotel and motel reservation services for others; No. 3,569,789 for the mark Q QUALITY HOTEL + design for use in connection with the provision of hotel and motel services, hotel and motel reservation services for others, and online hotel and motel reservation services for others; and No. 3,837,912 for the mark Q (stylized) for use in connection with hotel and motel services, hotel and motel reservation services for others, online hotel and motel reservation services for others, and providing a complimentary breakfast to hotel guests.  (Doc. 1, ¶¶ 11–44; Doc. 1-2 to Doc. 1-14).  Plaintiff contends that each registration is incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.  *See* (Doc. 1).

liability company organized under the law of the State of Alabama regularly engaging in the provision of hotel-motel services at 1610 South Main Street, Atmore, Alabama 36502 ("the Motel"). *Id.* at ¶ 2.

On September 30, 2011, Plaintiff and Defendants entered into a Franchise Agreement ("the Agreement"). (Doc. 1-15). The Agreement permitted Defendants to operate a QUALITY INN® franchise at the Motel and licensed the QUALITY® family of marks to Defendants for the duration of the Agreement. (Doc. 1, ¶¶ 53–54). The Agreement required Defendants make monthly franchise fee payments and pay service charges unto Plaintiff on an ongoing basis. *Id.* at ¶ 56. Defendants failed to satisfy these two obligations at some point prior to June 27, 2013. *Id.* Plaintiff notified Defendants of their breaches and provided an opportunity to cure. *Id.* at ¶ 58. Defendants did not cure their breaches. On August 29, 2013, Plaintiff notified Defendants that it was terminating the Agreement and that, per paragraph 11 of the Agreement, Defendants were no longer authorized to use the QUALITY® family of marks. *Id.* at ¶¶ 55, 61. Defendants were to immediately discontinue use of the QUALITY® family of marks in any manner and pay unto Plaintiff $86,390.33. *Id.* at ¶¶ 63, 65. Plaintiff made Defendants aware that further use of the QUALITY® family of marks by Defendants would constitute trademark infringement. *Id.* at ¶ 64. In spite of the August termination letter, Defendants continued to use the QUALITY® family of marks in, around, and in publicity for the Motel. *Id.* at ¶¶ 67–68.

Plaintiff then filed an arbitration claim against Defendants. On May 7, 2016, the American Arbitration Association issued Plaintiff an award totaling $95,870.73.

(Doc. 1, ¶¶ 70). Despite termination of the Agreement as of August 29, 2013 and subsequent arbitration, Defendants continued to make unauthorized use of the QUALITY® family of marks in, around, and in publicity with the Motel. *Id.* at ¶¶71–72. A site inspection on July 22, 2016 established that Defendants' unauthorized use continued at least through that date. *Id.* at ¶73.

Plaintiff initiated this action on August 26, 2016. (Doc. 1). Plaintiff asserts three Counts in its Complaint: (1) federal trademark infringement in violation of § 32(a) of the Lanham Act, 15 U.S.C. § 1114; (2) federal unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (3) trademark infringement/unfair competition in violation of Alabama common law. Plaintiff served a copy of the Summons and Complaint on Sarju Patel on September 7, 2016 (Doc. 13); Anand Patel on September 11, 2016 (Doc. 14); Key Hotels of Atmore II, LLC on September 11, 2016 (Doc. 15); and Dipan Patel on September 17, 2016 (Doc. 12). Defendants did not respond. The Clerk entered default on October 13, 2016. (Doc. 14).

In its Motion for Default Judgment, Plaintiff requests that Defendants be permanently enjoined from further use of the QUALITY® family of marks and be awarded statutory damages, which include profits realized by Defendants, damages suffered by Plaintiff, costs, and attorneys' fees. The Court will discuss each count and remedy sought in turn after setting forth the standard for analyzing Plaintiff's motion.

## II. ANALYSIS

"In this Circuit, 'there is a strong policy of determining cases on their merits

and we therefore view defaults with disfavor.'" *Virgin Records America, Inc. v. Lacey*, 510 F. Supp. 2d 588, 590 (S.D. Ala. 2007) (quoting *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003)). Even so, it is well understood that a court "has the authority to enter default judgment for failure … to comply with its orders or rules of procedure." *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985).

Where, as here, a defendant has failed to answer, appear, or otherwise acknowledge a suit after service, entry of a default judgment may be appropriate. Rule 55 itself provides for entry of default and default judgment when a defendant "has failed to plead or otherwise defend" against a claim. Fed. R. Civ. P. 55(a). Indeed, courts have entered default judgments against defendants who have failed to defend a claim of trademark infringement against them following proper service of process. *See, e.g., Illinois Tool Works Inc. v. Hybrid Conversions, Inc.*, 817 F. Supp. 2d 1351 (N.D. Ga. 2011) (issuing a default judgment awarding damages and instituting a permanent injunction in a trademark infringement action); *Alfa Corp. v. Alfa Mortg. Inc.*, 560 F. Supp. 2d 1166 (M.D. Ala. 2008) (issuing a default judgment granting damages and a permanent injunction in a trademark infringement action brought under the Lanham Act and Alabama common law); *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213 (S.D. Fla. 2004) (entering a default judgment awarding damages and a permanent injunction in a trademark infringement case). "In short, then, '[w]hile modern courts do not favor default judgments, they are certainly appropriate when the adversary process has been halted because of an essentially unresponsive party.'" *Virgin Records America,*

5

*Inc.*, 510 F. Supp. 2d at 591 (quoting *Flynn v. Angelucci Bros. & Sons, Inc.*, 448 F. Supp. 2d 193, 195 (D.D.C. 2006)).

As established above, Plaintiff completed service of process on Defendants. Defendants did not respond. Upon Plaintiff's motion, the Clerk made an entry of default, but this entry alone does not necessarily entitle Plaintiff to a default judgment. It is well established that a default is not an admission of liability establishing a right to recover. Default is merely "an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability." *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004). More simply, "a default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997). If the facts within the complaint establish liability, then the Court must determine appropriate damages. Where all essential evidence is of record, an evidentiary hearing on damages is not required. *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone…. We have held that no such hearing is required where all essential evidence is already of record.") (citations omitted); *see also PetMed Express*, 336 F. Supp. 2d at 1223 (entering default judgment, permanent injunction, and statutory damages in a Lanham Act case without a hearing).

**A. Federal and Common Law Trademark Infringement (Claims I and III)**

Section 32(1) of the Lanham Act attaches liability for trademark infringement when a person "use[s] in commerce any reproduction, counterfeit,

6

copy, or colorable imitation of a registered mark" which "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). In a successful trademark infringement claim, a plaintiff establishes that (1) defendant used plaintiff's mark in commerce, (2) without plaintiff's consent, and (3) defendant's mark is likely to cause consumer confusion or result in mistake. *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1249 (11th Cir. 2002); *see also Alfa Corp.*, 560 F. Supp. 2d at 1174 (applying this three part test to a default judgment for trademark infringement). The elements of an Alabama state-law infringement claim are the same as they are under the Lanham Act. *Alfa Corp.*, 560 F. Supp. 2d at 1175 (citing *Arthur Young, Inc. v. Arthur Young & Co.*, 579 F. Supp. 384, 389 (N.D. Ala. 1983)).

Plaintiff's Complaint establishes that Plaintiff is the registrant of the QUALITY® family of marks. Defendants were no longer authorized to use the QUALITY® family of marks after August 29, 2013. Even so, Defendants continued to use Plaintiff's marks in operation of the Motel. The mark Defendants continued to operate the Motel under is in fact a QUALITY® mark. Their unauthorized use of the mark is sure to lead consumers to believe that the Motel is actually affiliated with Plaintiff. Additionally, Defendants made no attempt to respond to or defend against this action, although provided notice. Defendants' "course of conduct amounts to a deliberate and intentional failure to respond, which is just the sort of dilatory litigation tactic for which the default judgment mechanism was created." *Virgin Records America, Inc.*, 510 F. Supp. 2d at 592. Therefore, the Court concludes that Plaintiff is entitled to default judgment on Count 1 of the Complaint.

Further, Plaintiff is entitled to default judgment on the common law trademark infringement claim in Count III since Alabama's elements are the same as under the Lanham Act.[2]

**B. Federal Unfair Competition (Count II)**

Section 43(a)(1)(A) of the Lanham Act creates a cause of action for unfair competition.  15 U.S.C. § 1125(a).  To succeed on a claim of unfair competition, a plaintiff must establish "(1) it had prior rights to the mark at issue, and (2) the defendant adopted a mark or name that was the same, or confusingly similar to, plaintiff's mark such that consumers were likely to confuse the two." *Alfa Corp.*, 560 F. Supp. 2d at 1174 (citing *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001)).

As established above, Plaintiff's Complaint establishes that it is the registrant of the QUALITY® family of marks.  Little question exists that Plaintiff has priority since Defendants sought a franchise from Plaintiff.  The mark Defendants used and continue to use is a holdover from prior authorized use, so confusion is certain.  Defendants' deliberate and intentional failure to respond further justifies default judgment in this matter.  *Virgin Records America, Inc.*, 510

---

[2] Plaintiff styles Count III as a claim of "Common Law Trademark/Unfair Competition"; however, the elements Plaintiff speaks to under Count III go to a claim of trademark infringement.  Further, Plaintiff relies on "the arguments and evidence cited [in its] federal infringement claim" section to support default judgment on Count III.  (Doc. 16, p. 9).  The Court deduces that Plaintiff does not raise a separate common law claim of unfair competition.  Support for this deduction is grounded in the principle that "Alabama does not recognize a common-law tort of unfair competition." *Alfa Corp.*, 560 F. Supp. 2d at 1175.  Indeed, Plaintiff heavily relies on *Alfa Corp.* to support the present motion and, therefore, is aware no such action lies under Alabama's common law.  To the extent Plaintiff does, in fact, raise such a claim, it is **DENIED** for the reasons just stated.

F. Supp. 2d at 592.  Therefore, the Court finds that Plaintiff is entitled to default judgment on Count II.

**C. Remedies**

Plaintiff seeks four different remedies: (1) a permanent injunction against Defendants, (2) a destruction order, (3) recovery of Defendants' profits and Plaintiff's damages for the period of infringement, and (4) attorneys' fees and costs. The Court will address each in turn.

**1. Permanent Injunction**

Plaintiff moves the Court for a permanent injunction requiring the following: (1) Defendants be permanently and forever enjoined from using the QUALITY® family of marks; (2) Defendants immediately remove all signage or indicia bearing the QUALITY® family of marks from the Motel; and (3) Defendants file a sworn statement of compliance which specifically states the date upon which they ceased use of the QUALTIY® family of marks at the Motel.  (Doc. 16, pp. 11–12).

The Lanham Act confers the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office."  15 U.S.C. § 1116(a).  An issuing court may require a defendant to serve upon a plaintiff "a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction."  *Id.*  Equitable principles require a plaintiff seeking a permanent injunction establish four elements: "(1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to

compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction." *Angel Flight of Ga., Inc. v. Angel Flight of America, Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

"'[I]rreparable injury include[s] loss of control of reputation, loss of trade, and loss of goodwill.'" *Sylvan Learning Inc. v. Learning Solutions, Inc.*, 795 F. Supp. 2d 1284, 1299 (S.D. Ala. 2011) (quoting *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 190 (11th Cir. 2005)). As the court in *Ferrellgass* explained,

> [t]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another.

*Ferrellgas*, 143 F. App'x at 190–91 (citation omitted). It is not necessary that actual damage to a plaintiff's reputation be established because "the loss of control of one's reputation by the adoption of a confusingly similar mark [ ] supplies the substantial threat of irreparable harm." *Id.* at 191.

In this case, Defendants' infringement affords them unfettered use of the QUALITY® family of marks. This robs Plaintiff of any control or input into actions directly bearing on its reputation and goodwill. Plaintiff claims that this has exposed and continues to expose it to irreparable injury. (Doc. 1, ¶ 97). The Court agrees. Moreover, Defendants continue to display Plaintiff's trademarks at the Motel. At a minimum, Defendants' display is sure to cause confusion because consumers have no reasonable means of establishing that the Motel is not affiliated

with Plaintiff.  Therefore, the Court is satisfied that Plaintiff has satisfactorily established irreparable injury.

The Court is also satisfied that Plaintiff has shown that no adequate remedy at law exists.  "It is generally recognized in trademark infringement cases that [ ] there is not adequate remedy at law to redress infringement …." *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989) (citation omitted).  In fact, a holdover franchisee's continued use of a trademark establishes that money damages are inadequate.  *Hospitality Intern., Inc. v. Sitaram, Inc.*, 2013 WL 6798927, at *7 (M.D. Fla. Dec. 23, 2013).

Considering the balance of hardships, it has been established that Defendants continue to operate the Motel under the QUALITY® family of marks.  Plaintiff stands to lose goodwill so long as Defendants continue their infringement since consumers could easily believe the Motel is affiliated with Plaintiff.  Should consumers be dissatisfied with a stay at the Motel, they might provide a bad review or not stay with a QUALITY® family of marks franchise again.  All along, Plaintiff would have no control over the outcome of a visit.  In contrast, injunctive relief would not be focused on curtailing all operations of the Motel, just the unauthorized use of Plaintiff's trademarks.  Defendants have no right to operate under the QUALITY® family of marks, and "therefore could suffer no legitimate hardship by being forced to stop that which [they] ha[ve] no right to do." *Tiramisu Intern. LLC v. Clever Imports, LLC*, 741 F. Supp. 2d 1279, 1288 (S.D. Fla. 2010).  Therefore, the undersigned is satisfied the balance of hardships tips in favor of Plaintiff.

As to the final element, "the 'public interest' relevant to the issuance of a

11

permanent injunction is the public's interest in avoiding unnecessary confusion." *Angel Flight*, 522 F.3d at 1209. Prohibition of Defendants' further use of Plaintiff's trademarks will certainly benefit the public by eliminating any possible confusion regarding Defendants' affiliation with the QUALITY® family of marks.

Given that Plaintiff has demonstrated all four elements, the Court finds that a permanent injunction foreclosing Defendants' trademark infringement is, in fact, "the order of the day." *Angel Flight*, 522 F.3d at 1209. Defendants are hereby permanently enjoined from use of the QUALITY® family of marks as set out below.[3]

## 2. Destruction of QUALITY® Family of Marks in Defendants' Possession

Plaintiff requests that the Court issue an order requiring that Defendants destroy any item in their custody or control bearing the QUALITY® family of marks.[4] (Doc. 16, p. 12). Under the Lanham Act, a court may order infringing items "delivered up and destroyed." 15 U.S.C. § 1118. Of course, a prerequisite to such an order is that a plaintiff establish a valid claim of infringement. This prerequisite is established above.

However, courts are reluctant to issue a destruction order when a plaintiff's right against infringement is adequately protected by a permanent injunction. *See Romag Fasteners, Inc. v. Fossil, Inc.,* 29 F. Supp. 3d 85, 112 (D. Conn. 2014) (finding a destruction order unnecessary when a permanent injunction issues); *Neva, Inc. v. Christian Duplications Int'l, Inc.*, 743 F. Supp. 1533, 1549 (M.D. Fla. 1990) (same).

---

[3] Therefore, the Court need not determine whether Plaintiff is due an injunction based on Count II or Count III.
[4] Plaintiff requests destruction as part of the injunction, but as explained, destruction of infringing items is a separate remedy under the Lanham Act.

12

This reluctance, however, is not without exception.  "[W]hen a defendant has defaulted, an order pursuant to § 1118 may be issued in addition to a permanent injunction when necessary to protect plaintiff's interest." *Diesel S.P.A.  v. Does*, 2016 WL 96171, at *11 (S.D.N.Y. Jan. 8, 2016) (ordering delivery and destruction of infringing products because "the [d]efendants … failed to appear in th[e] action, and because th[e] [c]ourt ha[d] no assurance that [the] [d]efendants w[ould] comply with the terms of the permanent injunction"); *S & S Brands, Inc. v. Seaford Stop & Shop Inc.*, 2014 WL 3871396, at *4 (E.D.N.Y. Aug. 5, 2014) ("[B]ecause the defendant has defaulted, the court cannot determine the extent of destruction that may be necessary, and … is unable to obtain representations from Defendant [ ] that [it] will comply with the injunction."); *Hammerhead Entertainment, LLC v. Ennis*, 2011 WL 2938488, at *10 (E.D. Va. July 19, 2011) (issuing a destruction order contemporaneously with an injunction when the defendant defaulted).

Given Defendants' default status, the Court finds that Plaintiff's interests are more adequately protected with a permanent injunction and a § 1118 order.  Plaintiff, however, does not request that Defendants deliver up the infringing items but merely asks for Defendants to destroy them.  Given Defendants' disregard for legal proceedings and ongoing infringement, the Court finds the more prudent measure is for Defendants to deliver up and Plaintiff ensure destruction.  Therefore, a delivery and destruction order under § 1118 should issue.  Plaintiff shall provide notice to the Court and Defendants unto whom delivery should be made.  Defendants will have thirty (30) days from such notice to make delivery as set forth below.

**3. Profits and Damages**

The registrant of a trademark who successfully establishes a defendant's infringement of that mark is entitled, "subject to the provisions of sections 1111 and 1114 …, and subject to the principles of equity, to recover (1) defendant's profits [and] (2) any damages …." 15 U.S.C. § 1117(a). Recovery for infringement is "cumulative, that is, the court may award the registrant both its damages and the infringer's profits." *Inmuno Vital, Inc. v. Golden Sun, Inc.*, 49 F. Supp. 2d 1344, 1362 (S.D. Fla. 1997). Section 1117 "confers upon the district court a wide scope of discretion to determine the proper relief due an injured party." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999).

Presently, Plaintiff seeks to recover both damages and profits. But as Plaintiff points out, Defendants' default status makes calculating either problematic. To be sure, royalties cannot be properly calculated because Defendants have made unauthorized use of the QUALITY® family of marks from August 29, 2013 through at least July 22, 2016. So, Defendants must identify the date upon which they ceased use of the QUALITY® family of marks in order to calculate royalties. Additionally, without documentation from Defendants, there is no way to know what profits Defendants realized from their unauthorized use of the QUALITY® family of marks. Therefore, pursuant to 15 U.S.C. § 1116(a), the Court finds Defendants shall provide an accounting of gross profits and a declaration as to when they ceased using the QUALITY® family of marks in writing and under oath as set forth below.

**4. Costs and Attorneys' Fees**

As with damages, the Lanham Act allows a registrant who establishes a defendant's trademark infringement to collect costs and attorneys' fees. 15 U.S.C. § 1117(a). With respect to attorneys' fees, the statute specifies that a court may award them "in exceptional cases." *Id*. "Exceptional cases are those where the infringing party acts in a malicious, fraudulent, deliberate, or willful manner." *Planetary Motion*, 261 F.3d at 1205 (citation omitted).

To begin with, the plain language of § 1117(a) makes clear that the higher standard for attorneys' fees does not apply to costs. Plaintiff as the prevailing party is, therefore, due to recover qualifying costs incurred in this action. As to attorneys' fees, Plaintiff has established that Defendants made unauthorized use of the QUALITY® family of marks. Defendants have had ample notice to cease use of the QUALITY® family of marks but persist in their unauthorized use. It is this continued use that demonstrates the deliberate and willful nature of Defendants' infringement. Thus, Plaintiff, the prevailing party, is also entitled to reasonable attorneys' fees. However, as Plaintiff points out, several matters remain unresolved. The total attorneys' fees and costs are certain to change. The Court, therefore, reserves ruling on the amount of reasonable attorneys' fees and costs due until a later time.

### III. CONCLUSION

In consideration of the above, the Court hereby **FINDS** as follows:

1. Plaintiff's Motion for Default Judgment (Doc. 18) is **GRANTED**.
2. A permanent injunction **ISSUES** as follows:

a. Defendants, their officers, agents, employees, representatives, subsidiaries, successors, assigns, and any persons or entities in active concert or participation with Defendants, shall be and hereby are **PERMANENTLY ENJOINED** and restrained from using any of the QUALITY® family of marks as set forth in footnote 1 or any mark confusingly similar thereto in connection with the advertising, promotion, or sale of any product or service.

b. Defendants, their officers, agents, employees, representatives, subsidiaries, successors, assigns, and any persons or entities in active concert or participation with Defendants, shall be and hereby are **PERMANENTLY ENJOINED** and restrained from operating or doing business under any name or mark that is likely to give the impression that the Motel is licensed by Plaintiff.

c. Defendants are required to **IMMEDIATELY** remove any and all QUALITY® branded signs, placards, and source indicators from the Motel located at 1610 South Main Street, Atmore, Alabama 36502.

d. Within thirty (30) days of this Order, Defendants shall file with the Court and serve on counsel for Plaintiff a written statement made under oath setting forth all of the steps taken to comply

with this Order.[5]

3. Plaintiff is **ORDERED** to serve notice to Defendants where all items to be destroyed are to be delivered within ten (10) days of entry of this Order.

4. Defendants are **ORDERED** to deliver up to Plaintiff for destruction all items, products, labels, signs, prints, packages, wrappers, receptacles, and/or advertisements in their possession or control bearing any of the QUALITY® family of marks as described in footnote 1 or any mark confusingly similar thereto within thirty (30) days of receiving service of notice from Plaintiff as to where such items are to be delivered.

5. Defendants are **ORDERED** to submit within thirty (30) days of this Order a report in writing and under oath setting forth the following: (1) the date upon which Defendants ceased use of the QUALITY® family of marks at the Motel and (2) an accounting of all gross profits received at the Motel from August 29, 2013 through the date Defendants ceased use of the QUALITY® family of marks. The parties shall notify the Court when said accounting is concluded. Upon conclusion of the accounting, the Court will order additional relief as the Court considers appropriate, at which time a final judgment will issue. Should the Court find a hearing necessary to determine the nature and amount of any damages or profits, the parties will be

---

[5] Any writing herein required by Defendants need not be individually submitted by each Defendant but can be made by all acting in unison.

17

notified.

The Clerk is directed to mail two copies of this Order, one by certified mail, return receipt requested, and the other by first class mail, to Defendants at the address where each received service of process, to wit:

1. Key Hotels of Atmore II, LLC at 3960 Wimbledon Park, Mobile, AL 36608;

2. Anand Patel at 3960 Wimbledon Park, Mobile, AL 36608;

3. Dipan Patel at 6401 Canebrake Road, Mobile, Alabama 36695; and

4. Sarju Patel at 108 East Oak Ridge Place, Brewton, AL 36426.

**DONE and ORDERED** this 9th day of November, 2016.

/s/  Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE